This is an action to enforce a claim and lien for material furnished by the plaintiff and used in the construction of a building for the defendant Hospital Company by the defendant Jones, contractor.
There was evidence tending to prove that the Hospital Company contracted with Jones for the erection of its hospital building, and that the total price to be paid for the same, after allowing credits and adding extras, was $18,712.88; that at the request of Jones, plaintiff furnished $1,858.15 worth of materials, all of which were used in the building, and that C. C. Benton was architect in charge of the work for the Hospital Company.
Jones testified that he (Benton) was representing the Hospital Company. My recollection is that it is stated in the specifications *Page 63 
that the contractor shall furnish to the architect statements of material furnished before he shall receive voucher for monthly payments. Benton was the architect who was in charge of the building the whole time I was there. I did furnish Benton with itemized statement. He required me to furnish statements each and every month, which he verified before he issued voucher. I would give him the statement, and he would go to the building and go over the bill and verify it by seeing for himself whether the goods mentioned in my bill were there. I furnished Benton, for the company, itemized statements that I got from Norfolk Building Supplies Company. I don't remember what date it was that each payment became due, but a day before that date would come I would prepare a statement of the amounts of pay-rolls and materials used and on the ground, and I would make them in duplicate and turn that over to Mr. Benton when he came on the ground. I made it in duplicate. He would take this duplicate and go over and count for himself and verify and would see if the amount of material used on the ground as I had stipulated. Before I could get my money I had to make this statement, and he would verify it, and when he had verified it and found it all right he would then issue me a voucher. He got his money only after furnishing statement and getting voucher from architect. Those were made in duplicate and given to Mr. Benton. Mr. Benton was my boss, and was in charge of that (59) building, representing the builders. I gave to the architect in an itemized statement anything that was furnished by the Norfolk Building Supplies, and after October, 1915, provided I collected it. In other words, if I got a voucher for it, I gave it.
Mr. Page also testified that on 18 January, 1915, he rendered statement, Exhibit 3, to Dr. McMullan, for the plaintiff, showing balance due, as follows:
STATEMENT (EXHIBIT 3).
SOLD TO MR. J. W. JONES,
ELIZABETH CITY HOSPITAL,
ELIZABETH CITY, N.C.
1914.
Sept. 12. 15 bags Keen's cement @ $1.50 ......................... $ 22.50 15. 2 bags red motor color, 200 lbs., @ 15c ............... 3.00 16. 90 lin. feet 3/4-inch rubber weather strip, @ 3 1/2c .. 3.15 25. To furnishing hardware, as per contract, August 14, 1914 ..................................... 270.00 30. Sash, doors, weights and cord, as per contract, July 18, 1914 ....................................... 1,225.00 *Page 64 
Oct. 12. 1 bag red motor color, 100 lbs ....................... 1.50 Nov. 7. 2 sash 1-5x5-2-1 3/4 10 lts. 2 wide glass D.S. No. 1 W.P.B.R. ............................................. 30. To furnishing and installing tile, as per contract, March 30, 1914 ...................................... 325.00 Cr. --------- $1,858.15 Oct. 8. By cash ................................................. 1,000.00 --------- 858.15
The defendant Jones also testified to a settlement with Dr. McMullan, representing the Hospital Company, on 18 January, 1915, as follows:
"Before I could get the money for my work I was required to give the architect a statement, and when he was satisfied as to the amount that was due me, he would issue a voucher. I had a final settlement with Dr. McMullan about the matter. The night that Dr. McMullan and I had the final settlement, of course, we went over the accounts to see what was due me. We agreed on everything, except when we were about to finish we found a variation. I think the variation was $477.58. Dr. McMullan told me that the difference represented a check that had been drawn by a man I had as foreman. I had not authorized the payment of those checks. I (60) don't know that those checks that my foreman, A. G. Page, drew went to pay the laborers on that building. The checks drawn by Mr. Page every month were not in my settlement and agreed by me as proper payment; I didn't know anything about them until Dr. McMullan and I had a settlement. We had monthly settlements. I did not know in each month. We had an agreement about how Mr. Page and the men working on the building were to be paid. I agreed to pay it at the time of the settlement with Dr. McMullan because I had nothing else to agree to. I never brought any suit for it. I never claimed that this was unauthorized, and never brought suit because I was advised that if I took a step that would be legal, that I would have to prosecute a bank and they, in turn, would have to take it up with Page, and if I did win I would be loser, on account of attorneys' fees and expense money. I was advised that in order to get $400 I would have to pay more than that for attorneys' fees."
There was also evidence that after this settlement the Hospital Company paid to the several claimants, including the plaintiffs, their pro rata
share of said sum of $1,000, the amount agreed on in the settlement. There was also in evidence that the Hospital Company had in hand, due to the contractor, $501.98 on 29 September, 1915. *Page 65 
At the conclusion of the evidence his Honor entered judgment of nonsuit upon the ground (1) that there was no evidence that the plaintiff had furnished itemized statements to the Hospital Company, or its agent; (2) that if such statement was furnished, there was no evidence of any amounts due the contractor at that time except said sum of $1,000, which was distributed according to law.
The plaintiff excepted and appealed.
The statement of 18 January, 1915, is a sufficient compliance with the statute. But if it was not, the Hospital Company waived any objection to it when it accepted the statement and paid money to the plaintiff on it. There is also evidence that thereafter the Hospital Company owed the contractor $501.98, which, if true, entitled the plaintiff to its pro rata part thereof. There was therefore error in the ruling of his Honor.
We have not considered the legal effect of the statements made by the contractor to the owner from time to time because we fail to find evidence of any amount due when they were made.
Reversed.
Cited: Construction Co. v. Journal, 198 N.C. 277.
(61)