GRIER-LOWRANCE CONSTRUCTION COMPANY v. WINSTON-SALEM
JOURNAL COMPANY.

(Filed 12 February, 1930.)

1. **Laborers' and Materialmen's Liens B c—Subcontractor must furnish notice to owner in order to hold him responsible for debt.**

   A subcontractor or material furnisher for a building, in order to hold the owner liable for the amount of his claim, is required to give, in apt time, notice to the owner showing an itemized, detailed statement of the claim or materials furnished, except when the contract is entire and complete for a gross sum such specific itemization is not required, and when such notice has not been given he will be regarded as a stranger to the building contract between the owner and the contractor and may not maintain an action against the owner.

2. **Laborers' and Materialmen's Liens C a—In this case held: contractor could maintain action against owner for amount of subcontract.**

   Where the contract for the erection of a building has been abandoned because of the owner's failure to make payments thereunder according to its terms, and a new agreement has been entered into by the parties under which the contractor agrees to complete the building upon the owner's agreement to pay certain additional charges, and the contractor furnishes a statement under the new agreement showing the amounts due for specified items and providing that "there may be some additional charges and credits which may affect the above statement, in which event an additional statement will be rendered," and it appears that the amount of a certain subcontract was omitted from the statement, and that the sub-

contractor may not hold the owner responsible therefor because of failure to give the required notice: *Held*, the contractor may maintain his action against the owner upon the agreement for the amount due on the subcontract.

3. **Appeal and Error K d—Where judgment erroneously includes sum certain with amount recoverable by plaintiff, judgment will be modified and affirmed.**

Where a judgment appealed from correctly awards a recovery in a sum stated, but erroneously includes an amount which may readily be ascertained, it is not necessary to award a new trial on appeal, and the judgment will be modified and affirmed.

CIVIL ACTION, before *Harding, J.*, at March Term, 1929, of IREDELL.

The plaintiff is a corporation engaged in general contracting business, and on the 19th day of August, 1926, entered into a contract with the defendant to furnish labor and material necessary for the construction and erection of a building in the city of Winston-Salem, according to plans and specifications furnished by Harold Macklin, architect. The contract price was $144,950.

The plaintiff began work on the building, but the defendant neglected to comply with the provisions of said contract, which were to be kept and performed by the defendant, in that, said defendant failed to make monthly payments according to the agreement. Subsequently the plaintiff notified the defendant that it would not proceed further with the work. Thereupon, plaintiff alleges, that it was mutually agreed "that the defendant would pay the plaintiff the total cost of all labor, material, equipment, repairs, power and rent of property, telephone, telegraph, equipment rental and all miscellaneous expenses, and also interest expense caused by not receiving checks for estimates when due, discounts lost by not receiving checks when estimates were due and interest on deferred payments of estimates."

The plaintiff then proceeded to complete the building according to plans and specifications.

Thereafter, in pursuance of such new agreement, the plaintiff submitted to the defendant a statement which was introduced in evidence and referred to as Exhibit "1." This paper writing is as follows:

"GRIER-LOWRANCE CONSTRUCTION COMPANY, STATESVILLE, N. C.
FINAL ESTIMATE.

Winston-Salem Journal Building. 25 August, 1927.

Total labor, material, equipment, repair, power, rent on property, telephone, telegraph and misc. expenses to 1 August, 1927 ..................................................................................$149,229.50
Material, labor and misc. expenses from 1 August to date ..... 1,573.69

CONSTRUCTION COMPANY *v.* JOURNAL.

| | |
|---|---:|
| Balance to be billed on T. M. B. flooring.................................$ | 1,007.84 |
| Balance to be billed on oak flooring.......................................... | 720.00 |
| Amount due plaster contract...................................................... | 300.00 |
| Equipment rental ........................................................................ | 1,500.00 |
| Interest expense caused by not receiving checks for estimates when due ............... ..................................................... | 2,522.53 |
| Discounts lost by not receiving check when estimates were due | 14,522.11 |
| Interest on estimates (deferred payments)................................ | 1,034.26 |
| | $159,409.93 |
| Plus 10% ........................:...................................................... | 15,944.00 |
| | $175,353.93 |
| Less amount previously paid.............................................. | 132,763.50 |
| Amount payable .......................................................................$ | 42,590.43 |
| Less 10% on the above interest charges ($5,008.90)........ | 500.89 |
| | $ 42,089.54 |
| Less balance to be billed on oak flooring............................. | 720.00 |
| | $ 41,369.54 |

There may occur some additional charges or credits which may affect the above statement, but in the event we will make an additional statement to the Winston-Salem Journal showing these charges or credits, and attaching our check to cover in the event that the credits are larger than the debits.

Approved for payment, H. Macklin, Architect, 25 August, '27."

In accordance with the terms of said Exhibit "1" the defendant gave the plaintiff a note for $41,369.54, which was afterwards paid in full.

The plaintiff made a subcontract for the roofing and certain metal work on said building with the Ingold Roofing Company.

Subsequent to the settlement above referred to, in November, 1927, the plaintiff discovered that the Ingold Company had never been paid for the roofing and sheet metal work. The Ingold Company sent a bill to the plaintiff at that time for $2,080 for material which had been used in said building. The defendant refused to pay the bill, and thereupon the plaintiff brought suit. A single issue of indebtedness was submitted to the jury, and the jury answered the issue in favor of plaintiff, awarding a recovery of $2,228 with interest from date.

From judgment upon the verdict the defendant appealed.

*Grier & Grier for plaintiff.*
*Manly, Hendren & Womble for defendant.*

BROGDEN, J. Can a contractor sue the owner and recover the contract price for labor and material furnished such owner by a subcontractor or materialman; and, if so, under what circumstances?

In *Hardware Co. v. Schools,* 151 N. C., 507, 66 S. E., 583, this Court said: "Even a cursory perusal of our statute (Revisal, ch. 48) will make it plainly appear that a subcontractor or a person who furnishes materials for the construction of the building has no claim against the owner apart from the claim he acquires by virtue of his lien after notice to the owner and before he settles with the contractor. The statute was not intended to change the well-settled general principle that there must be privity of contract before any liability by one person to another can arise. We know that this general principle has its exceptions, arising out of the peculiar nature of the cases to which they apply."

The identical question involved in the present suit was considered in the case of *Perry v. Swanner,* 150 N. C., 141, 63 S. E., 611. In that case the contractor sued the owner and the trial judge sustained a motion of nonsuit. The plaintiff, who was a contractor, brought the suit in his own name to the use of various materialmen. In affirming the judgment of nonsuit the Court said: "It is not a question of parties, as we understand the matter, that is raised by the motion to nonsuit, but a question as to whether or not the plaintiff has made out a cause of action upon which he personally can recover. There is only one plaintiff to this action, and the fact that he sues to the use of a number of others who furnished material to defendants for the construction of the house does not necessarily make them parties, so as to be bound by a final judgment. . . . The plaintiff testified that he furnished to defendants written statements of the sum due to the materialmen, in accordance with the statute (Revisal, secs. 2021, 2022, 2023). When that statute is complied with, a direct obligation upon the part of the owner to the materialman may be created upon which the latter may sue in his own name." Hence to constitute the owner the debtor of the materialman, or to establish privity of contract in such cases, there must be a notice and the resulting lien, in order to enable the materialman or subcontractor to maintain a suit in his own name. *Foundry Co. v. Aluminum Co.,* 172 N. C., 704, 90 S. E., 923. In the event the notice is given the owner either by the contractor or the subcontractor or materialman, then it becomes the "duty of the owner to retain from the money thus due the contractor a sum not exceeding the price contracted for"; and in such event, the materialman or subcontractor may maintain an action against the owner personally, even though the action to enforce the lien

CONSTRUCTION COMPANY *v.* JOURNAL.

was not commenced within the prescribed statutory period. *Campbell v. Hall,* 187 N. C., 464, 121 S. E., 761.

The question then arises: What constitutes such notice as will confer upon the subcontractor or materialman the right to maintain a suit in his own name? The decisions of this Court referring to the question may be found in the following cases: *Jefferson v. Bryant,* 161 N. C., 404, 77 S. E., 341; *Building Supply Co. v. Hospital Co.,* 174 N. C., 57, 93 S. E., 440; *Building Supply Co. v. Hospital Co.,* 176 N. C., 87, 97 S. E., 146; *King v. Elliott,* 197 N. C., 93. These decisions, in substance, require that the notice or itemized statement must be "filed in detail, specifying the materials furnished or labor performed and the time thereof." Such notice or itemized statement must show substantial compliance with the statute. However, if it is an entire contract for a gross sum the particularity otherwise required is not essential.

The record in the case at bar discloses that Ingold Roofing Company did not furnish the owner, or defendant, a notice, neither did it attempt to file or enforce a lien upon the property.

It further appears that the Ingold Company rendered the bill directly to the plaintiff. A witness for plaintiff, who was associated with the Ingold Company, testified: "This bill is against the Grier-Lowrance Construction Company. I did not at any time contemplate filing a lien on the building. I know the concern of Grier-Lowrance Construction Company." Mr. Grier, who was secretary and treasurer of plaintiff, testified: "The Ingold Company rendered this bill to me. I am due this bill to the Ingold Company. The Winston-Salem Journal Company is due this bill to me." Mr. Moon, witness for the defendant, testified: "I contracted with the Grier-Lowrance Construction Company to do the work. I do not know who did it."

There was evidence to the effect that after the bill was rendered to the plaintiff the matter of payment thereof was discussed with Mr. Moon, who apparently was the agent of defendant. There is no evidence in the record, as we interpret it, tending to show that any itemized statement or notice was ever furnished to the owner by either the contractor or the subcontractor or materialman. Indeed, the subcontractor or materialman was asserting his claim exclusively against the contractor. Under these circumstances we are of the opinion, and so hold, that the plaintiff can maintain the action.

The defendant offered the original contract in evidence. Upon objection by the plaintiff this paper-writing was excluded. It is clear that, whether the original contract was totally abandoned or not, the settlement was made between the parties on the basis of Exhibit "1." The said Exhibit "1" contained these words: "There may occur some additional charges or credits which may affect the above statement, but in

the event we will make an additional statement to the Winston-Salem Journal showing these charges or credits, and attaching our check to cover in the event that the credits are larger than the debits." This language is a definite declaration that there might be other items of adjustment between the parties, and this case was tried upon the theory that the amount due for the roofing and sheet metal was such an item and was included within the meaning of the language used. Therefore, the original contract did not seem to be material.

However, we do not think that the foregoing language contained in Exhibit "1" covered or included an allowance of 10% upon the amount of the Ingold bill. From an inspection of Exhibit "1" it would appear that the 10% allowance applied only to the items therein set forth, or the settlement therein made. It appears that the trial judge permitted the jury to consider this item. This was error, but not such error as to warrant a new trial. It should be stricken from the judgment.

There are other exceptions to which we have given careful consideration, but none of them warrant the awarding of a new trial.

Modified and affirmed.